IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVEY JAMES KIMMEL, | : | Civil No. 1:23-CV-00016 |
| Plaintiff, | : | |
| v. | : | |
| C.O. DOUGHTY, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

# **MEMORANDUM**

Before the court is an uncontested motion for summary judgment filed by Defendant Correctional Officer Doughty ("Doughty"). (Doc. 30.) Despite the court extending the period for Davey James Kimmel ("Plaintiff") to respond to the pending motion, there has been no response. (Docs. 33, 35.) After reviewing the motion for summary judgment and supporting documents, the court will grant the motion, and enter judgment in Defendant Doughty's favor.

## PROCEDURAL BACKGROUND AND HISTORY

In January of 2023, Plaintiff, an inmate currently housed at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"), filed the complaint in this matter. (Doc. 1.) The complaint is difficult to read and alleges multiple claims arising from multiple factual scenarios under the umbrella of 42 U.S.C. § 1983. (*Id.*) Following a screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court dismissed all claims and all defendants except the

1

August 2022 use of excessive force claim against Defendants Doughty, Deputy Warden Becky Davis ("Davis"), and Captain Mease ("Mease"). (Doc. 8.) In the complaint, Plaintiff did not identify the facility at which the alleged incident of excessive force took place. However, the three defendants have working addresses located in Lebanon, Pennsylvania and one of the attached documents is from Lebanon County Correctional Facility. (Doc. 1, p. 3; Doc. 1-2.)[1] Therefore, the court has concluded that the alleged incident took place at the Lebanon County Correctional Facility. (Doc. 23, p. 2.)

The alleged facts surrounding the August 2022 incident are contained in a single paragraph in the complaint:

> [I]n August of 2022 on about the middle of the month I was having issues with another inmate[,] and the COs did nothing[.] [S]o I covered my gate after being refused a white shirt[.] [T]hen[,] White Shirt Doughty came[.] [H]e asked me to come cuff up[,] and I did so[.] [A]s I was heading to my gate to cuff up[,] White Shirt Doughty pepper sprayed me for no valid reason. I reported this to ex[-]captain Mease, Deputy Warden Becky Davis at the time of DB.

(Doc. 1, p. 13.) As discussed above, the court dismissed all claims and all defendants except the August 2022 use of excessive force claim against Defendants Doughty, Deputy Warden Becky Davis ("Davis"), and Captain Mease ("Mease"). (Doc. 8.) Plaintiff was granted leave to amend his complaint and

---

[1] For ease of reference, the court use the page numbers from the CM/ECF header.

provided copies of the court's civil rights complaint form for the use of amending his complaint. (Doc. 24.) No amended complaint was received by the court.

The court forwarded waiver of service forms to the above three named defendants, who promptly returned them. (Docs. 9, 12, 13, 14.) Defendant Doughty filed an answer to the complaint on March 27, 2023. (Doc. 17.) Defendants Davis and Mease filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) and a brief in support. (Docs. 15, 16.) The court granted this motion on December 22, 2023 and dismissed all claims against Defendants Davis and Mease. (Doc. 24.)

Defendant Doughty filed a motion for summary judgment on August 23, 2024. (Doc. 30.) The court received no response to the motion within the period prescribed by the Local Rule 7.6. On September 18, 2024, the court sua sponte granted Plaintiff additional time to respond to the dispositive motion. (Doc. 33.) The mail was returned to the court as undeliverable marked as "RTS REF" which the court construes as "Return to Sender, Refused." (Doc. 34.) The court then entered an order granting additional time, until November 15, 2024, for Plaintiff to respond to the motion for summary judgment. (Doc. 35.) The court has not received any response from Plaintiff. Therefore, the court will now address the motion for summary judgment as unopposed.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at Lebanon County Correctional Facility, located in Lebanon County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

**A. Summary of Defendant Doughty's Statement of Undisputed Material Facts.**

Along with the motion for summary judgment and brief in support, Defendant Doughty filed a statement of undisputed material facts. (Doc. 31.) On September 12, 2022, Plaintiff was incarcerated at the Lebanon County Correctional Facility. (*Id.*, ¶ 1.) Defendant Doughty was employed as a Correctional Officer at the Lebanon County Correctional Facility on September 12, 2022, and was stationed in the central control at the facility. (Doc. 31, ¶ 2; Doc. 31-1 ¶¶ 1–2.) According to Defendant Doughty, there was no evidence of any event involving

Plaintiff covering his cell gate in August of 2022, but there was such an incident in the records on September 12, 2022.² (Doc. 31, ¶¶ 3–4; Doc. 31-1, p. 7–8.)

According to the Misconduct Report authored by Defendant Doughty and filed in this action as evidence, on September 12, 2022, Defendant Doughty saw Plaintiff, via camera, kick his cell gate/plexiglass covering, and cover the cell gate with his uniform and bed sheet. (Doc. 31-1, p. 7.) Defendant Doughty and PFC Marderness, Officer McDaniels, Officer Torres, and Officer Batz entered the Secured Housing Unit and removed the items that were blocking the cell gate. (*Id.*) Plaintiff then became "agitated." (*Id.*) Defendant Doughty wrote in the report that he turned to pick up the uniform and sheet from the floor, and Plaintiff kicked the cell gate and threatened to kill himself so that he could be seen by medical. (*Id.*) Defendant Doughty states that "I then pulled my OC can from my duty belt and stuck my hand inside the cell and delivered a one (1) second burst of OC." (*Id.*) Plaintiff then covered his face and moved to the back of his cell "causing the spray to be ineffective." (*Id.*) Defendant Doughty then removed his hand from the cell and told Plaintiff to come to the cell gate so he could be handcuffed. (*Id.*) Inmate refused, and lowered the t-shirt that was covering his face. (*Id.*) The report states that "[i]t was at this time that a second one (1) second

---

² The September 12, 2022 date is consistent with the Disciplinary Board Hearing summary attached to Plaintiff's complaint, which states the date of the offense was September 12, 2022. (Doc. 1-2.)

7

burst of OC was deployed into the cell."³  (*Id.*)  Defendant Doughty then ordered the witnessing officers to exit the block.  (*Id.*)  He then gave Plaintiff orders to lay on his stomach with his hands on his back.  (*Id.*, p. 8.)  The officers then went into his cell and placed wrist restraints on Plaintiff.  (*Id.*)  Defendant Doughty and Corporal Geth assisted Plaintiff to his feet and escorted him to the detail cleaning closet so he could be decontaminated.  (*Id.*)

### B. Judgment Will Be Entered In Favor of Defendant Doughty.

As discussed above, the sole remaining claim in this matter is an Eighth Amendment use of excessive force claim.  (Doc. 8.)

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  *Glossip v. Gross*, 576 U.S. 863, 876 (2015).  "The Supreme Court has interpreted this prohibition . . . to bar prison officials from using excessive force against inmates[.]"  *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (citing *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)).

To demonstrate that a prison official defendant has violated the Eighth Amendment, a plaintiff must establish two (2) elements: a subjective and an objective element.  *See Hudson*, 503 U.S. at 8.  First, a plaintiff must show that the

---

³ The court notes that the Misconduct Report does not state who sprayed Plaintiff with OC spray the second time, but Defendant Doughty's affidavit states "I then deployed a second, one-second burst of OC spray." (Doc. 31-1, p. 3.)

8

defendant acted with a "sufficiently culpable state of mind[,]" and second, a plaintiff must show that the defendant's conduct was objectively "sufficiently serious[.]" *See Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991). Where a prison official is alleged to have used excessive force in violation of the Eighth Amendment, the pertinent inquiry for the subjective element is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 7; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 231 (3d. Cir. 2015) (explaining that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,]" and "[t]his is true whether or not significant injury is evident"). There are several factors that courts consider in determining whether a prison official has used excessive force against a prisoner, including:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

*See Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Here, Defendant Doughty has presented evidence in the form of his affidavit and the misconduct report that demonstrates Plaintiff had presented a threat to

9

himself and others and Defendant Doughty used the OC Spray as a means to maintain or restore discipline.  (Doc. 31-1.)  The affidavit states "I removed Plaintiff's uniform from the cell gate and Plaintiff became agitated and began kicking his cell gate and threatening to kill himself," "[i]n light of Plaintiff's defiant and disruptive behavior, coupled with his threat of imminent self harm, I deployed a single, one-second burst of Oleoresin Capsicum ("OC") spray into Plaintiff's cell," "I instructed Plaintiff to comply with directives to be cuffed," "Plaintiff refused to comply with directives to be cuffed," and "[i]n light of Plaintiff's continued resistance, I then deployed a second, one-second burst of OC spray."  (*Id.*, ¶¶ 7–8, 10–12.)  This was repeated in the misconduct report: "I turned to pick up the uniform and sheet from the floor and it was at this time that Inmate Kimmel kicked the cell gate and threatened to kill himself . . ."  (*Id.*, p. 7.)

      With this evidence, Defendant Doughty met his initial responsibility of identifying the portion of the complaint that he believed demonstrated an absence of genuine issue of material fact under *Celotex Corp*: that he used the OC spray as a means to maintain or restore discipline.  The burden then shifts to Plaintiff to oppose the motion by presenting evidence showing that there is a genuine issue for trial.  *Jutrowski*, 904 F.3d at 288–89.  Despite being provided multiple opportunities to oppose the evidence submitted by Defendant Doughty, Docs. 33, 35, Plaintiff did not respond.  Therefore, summary judgment is appropriate because

10

Plaintiff "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## CONCLUSION

For the reasons set forth above, the court will grant Defendant Doughty's motion for summary judgment and enter judgment in favor of Defendant Doughty. An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: February 24, 2025